JACKSON v. CENTRAL COMMERCIAL OIL CO. et al.

No. 32706. Sept. 23, 1947.

*184 P. 2d 974.*

Winfield Scott and Page Belcher, both of Enid, for plaintiff in error.

John Butler, of Fairview, and W. F. Schuermeyer, of Tulsa, for defendants in error Central Commercial Oil Company and Central Commercial Company.

G. Earl Shaffer, of Tulsa, for defendant in error Major Royalty Corporation.

Joy G. Clayton, of Tulsa, for defendant in error William H. Meissner.

LUTTRELL, J. This action was brought by the plaintiff, Pearl Jackson, on August 18, 1945, to cancel a mineral deed made by her and her husband on April 2, 1928, to Central Commercial Oil Company, and deeds made by that company to the other defendants, and to quiet her title to the land involved. Defendants, by answers and cross-petitions, asserted the validity of the various mineral deeds, and asked that title be quieted in them. The case being one of equitable cognizance was tried to the court without a jury, and judgment was rendered for defendants. Plaintiff appeals.

The original mineral deed executed by plaintiff and her husband conveyed an undivided one-half of the minerals under 135 acres of land in Major county, for a consideration of $135 or $2 per acre. It was taken by a buyer named Wallace, who purchased mineral interests under a number of tracts in the vicinity for a similar consideration, for the purpose of resale. The name of the grantee was left blank, and a written instrument authorizing the insertion of the name of the grantee was executed at the same time. An oil and gas mining lease covering the land was also executed. Plaintiff's husband was almost blind, and did not sign the mineral deed, plaintiff signing his name thereto. Thereafter he deeded the land to plaintiff, and subsequently, and in the year 1939, died.

Plaintiff first contends that the mineral deed was obtained by fraud and trickery, was a second degree forgery, and void under the rule announced in Wesley v. Diamond, 44 Okla. 484, 144 P. 1041; First National Bank v. Wade, 27 Okla. 102, 111 P. 205, and other cases so holding.

In support of this contention plaintiff and her son, who was 18 years of age when the deed was executed, testified that plaintiff's husband refused to sell Wallace any mineral interest, and that they understood that the papers executed were lease papers; that Wallace read the lease to them and did not read any royalty deed, and that plaintiff and her husband would not have signed a mineral deed if they had not been misled by Wallace. Plaintiff admitted that the signatures of herself and her husband on the mineral deed were written by her; that she had some education and could read and understand written instruments. She also admitted that as early as 1935 and about four years prior to the death of her husband, she knew of the existence of the mineral deed, but took no action to cancel it, giving as her reason therefor that no consideration had been paid for it, and she did not believe it would hold. She filed this action after the drilling of a producing well in the vicinity had greatly increased the value of the mineral interests.

The notary public who took the acknowledgment of plaintiff and her husband was produced as a witness by defendants. He testified that Wallace employed him to furnish an automobile and take acknowledgments for a stated compensation per day; that Wallace was buying mineral interests, paying therefor a standard price of $2 per acre; that he had made other purchases in the vicinity at that price, and that the deal made by Wallace with plaintiff and her husband followed the same pattern; that plaintiff read the mineral deed to her husband, and signed both her name and her husband's, and that both she and her husband acknowledged the signatures to him. He testified that Wal-

lace also took oil and gas leases from the persons who sold royalty to him, but that no consideration was paid for the leases, which were taken in the hope that some one would take them and pay rentals on them; that the mineral deeds were made first with the understanding that any rentals paid on the lease would be shared by the grantee. His testimony as to the value of mineral interests and leases, and the way these deals were made, was corroborated by a local banker and by other witnesses for defendants. The notary was a deputy sheriff at the time he took the acknowledgments on the mineral deed, and his veracity and integrity were not questioned.

In Hembree v. Douglas, 169 Okla. 403, 37 P. 2d 314, we said:

"Alleged fraud in procurement of written instrument must be sustained by preponderance of evidence so great as to overcome all opposing evidence and repel all opposing presumptions of good faith."

And, in Sanders v. Rhea, 119 Okla. 208, 249 P. 350, we said:

"In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proofs must sustain the allegations by a preponderance of the evidence and repel all opposing presumptions. It should be of such weight and cogency as to satisfactorily establish the wrongful conduct charged; honesty and fair dealing, as a rule, being presumed."

Measured by these standards, the evidence falls far short of proving trickery and fraud. Plaintiff could read, was in no wise mentally incompetent or incapacitated, and there is no evidence of any trick or artifice practiced to prevent her from reading the deed and knowing what she was signing. Therefore, she was bound thereby. Ames v. Milam, 53 Okla. 739, 157 P. 941.

The finding of the trial court that plaintiff failed to prove that the mineral deed was procured by fraud and trickery is not clearly against the weight of the evidence, but is amply sustained thereby.

Plaintiff next contends that the land was the homestead of herself and her husband, and that the mineral deed was not executed by both her and her husband, and is therefore void under the provisions of 16 O.S. 1941 §4 . She asserts that as her husband could not sign his name, it was essential that the provisions of 16 O.S. 1941 §34, providing for signature by mark, be strictly complied with, and that the signing of his name by her was not sufficient. In support of this contention she cites Kemper v. Todd, 123 Okla. 209, 255 P. 701; Wagner v. Davidson, 127 Okla. 199, 260 P. 37, and other similar cases.

Defendants assert that the acknowledgment of the deed by plaintiff's husband was an adoption of the signature by him, citing Scott v. Scott, 131 Okla. 144, 268 P. 245; Elem v. Mahannah, 177 Okla. 597, 61 P. 2d 241; Bretch v. White, 180 Okla. 69, 67 P. 2d 945, and other cases so holding. In Stidham v. Moore, 100 Okla. 26, 227 P. 128, cited by defendants, the wife's name was signed by the husband, and we held that her acknowledgment was an adoption of such signature, and that the deed conveying the homestead was valid.

Plaintiff in effect concedes the rule announced in the cases above cited, but seeks to avoid its application to the deed here involved by contending that the notary was an interested party in the transaction, and therefore disqualified, citing 1 C.J.S. 822, par. 53; 1 C.J.S. 827, par. 57, and 1 Am.Jur. 334, par. 52. This contention is based upon the fact that the notary, while testifying to the procuring of mineral deeds by Wallace, used the pronouns "we" and "us", and by the further fact that he sent the mineral deed and lease executed by plaintiff, together with some others for the payments on which he felt personally responsible because he had "stood good" for them, to Tulsa with a draft payable to him, and paid the landowners when

the draft was paid. He testified positively that he was interested only in getting his daily wages, and that he accounted to Wallace for the money paid on the draft, and that he had no interest in the buying of the mineral interests. His testimony was not contradicted or impeached, and the trial court properly found that he was not disqualified, and held that plaintiff's husband, by acknowledging the deed, adopted the signature, and that the deed was valid and binding. This finding and holding were amply sustained by the evidence.

Affirmed.

HURST, C.J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur.